

SO ORDERED.

SIGNED this 20 day of April, 2011.

___Dale L. Somers___
Dale L. Somers
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re: | |
| MEGAN DIANE BALLWAY, | CASE NO. 10-13945 |
| DEBTOR. | CHAPTER 7 |
| LINDA S. PARKS, Trustee, | |
| PLAINTIFF, | |
| v. | ADV. NO. 11-05016 |
| PERSELS & ASSOCIATES, LLC and LAURA K. SIMPSON-REDMOND, | USDC Case No. 11-111-JTM |
| DEFENDANTS. | |

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION TO WITHDRAW THE REFERENCE
AND FOR TRANSFER TO THE DISTRICT COURT

This adversary proceeding is before the Court on a motion by the Defendants to withdraw the reference of the proceeding and immediately transfer it to the District Court based upon their asserted right to a jury trial on claims made against them. Pursuant to Local Rule 83.8.6, the Court makes the following recommendation that reference be withdrawn after all pre-trial proceedings have been completed.

**FACTUAL AND PROCEDURAL BACKGROUND.**

Linda S. Parks, the Chapter 7 Trustee, filed this adversary case on January 13, 2011.[1] She alleges that in an effort to avoid bankruptcy and in response to online advertising, Debtor Megan Diane Ballway (hereafter "Debtor") retained Defendants Persels & Associates, LLC (hereafter "Persels"), a Maryland corporation, and Laura K. Simpson-Redmond, an attorney residing in and licensed in Kansas but associated with Persels, to provide legal services to assist Debtor in resolving her unsecured debt. Debtor made monthly payments to Persels, allegedly transferring at least $2,300 during the two years before her bankruptcy, but Defendants failed to settle any debts. In September 2010, Debtor stopped making payments to Persels and retained legal services of different counsel. After numerous requests, Persels refunded Debtor $1200, but kept in excess of $1300 as legal fees. Debtor filed a Chapter 7 petition on November 18, 2010.

---

[1] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. Furthermore, this Court may hear and finally adjudicate some of the claims because they are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(E), (F), and (H). There is no objection to venue or jurisdiction over the parties.

2

The Trustee alleges Defendants committed legal malpractice, breached their fiduciary duties to Debtor, violated Kansas statutes, and charged an unreasonable fee. The Complaint is in six counts. The Trustee seeks to avoid and recover in excess of $2530 charged and collected by Defendants as fraudulent conveyances, preferences, and as disgorgement of professional fees. The Trustee also alleges that Defendants committed deceptive and unconscionable acts that violated the Kansas Consumer Protection Act and also violated the Kansas Credit Services Organization Act. In addition, she seeks to recover actual and punitive damages for legal malpractice and breach of fiduciary duty.

Service of the Complaint was by certified mail on Persels on January 19, 2011 and on Ms. Simpson-Redmond on January 20, 2011. Counsel for Defendants entered his appearance on January 24, 2011. On February 8, 2011, Defendants filed a demand for a jury trial, notice of lack of consent to a jury trial to be heard by the Bankruptcy Court, and a timely[2] Motion to Withdraw Reference and Transfer Proceedings to District Court (hereafter "Motion"). The Trustee objects to the Motion.

**ANALYSIS.**

The Defendants move to withdraw reference under 28 U.S.C.A. § 157(d), which provides in relevant part: "The district court may withdraw, in whole or in part, any case

---

[2] Local Rule 83.8.6 (c) provides that an original defendant must file a motion to withdraw reference within 20 days after the movant has entered an appearance or been served with summons or notice. Bankruptcy Rule 9006(a)(1) provides that when a period is stated in days, the day of the event that triggers the period is excluded and the last day is included, unless it is a Saturday, Sunday, or legal holiday. Subsection (f) provides that when there is a requirement to act within a prescribed period after service by mail, three days shall be added to the period calculated under Rule 9006(a).

or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." The right to a jury trial has been recognized as cause for withdrawal of reference.³ District of Kansas Local Rule 83.8.13(a) declares that: "A district judge shall conduct jury trials in all bankruptcy cases and proceedings in which a party has a right to trial by jury, a jury is timely demanded, and no statement of consent to jury trial before a bankruptcy judge has been filed." Whether the Defendants' Motion should be granted, therefore depends on whether they have a right to a jury trial on the claims the Trustee is making against them.

There is no doubt that there is a right to trial by jury as to several of the claims asserted by the Trustee. The Seventh Amendment to the United States Constitution preserves the right to trial by jury in "suits at common law," meaning "suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered."⁴ The Seventh Amendment preserves the right to trial by jury as to the issues for which a legal remedy is available.⁵ Whether a litigant has a constitutional right to trial by a jury for statutory claims asserted by a bankruptcy trustee is governed by the following analysis announced by the Supreme Court in *Granfinanciera*:

---

³ *E.g., Manley Truck Line, Inc. v. Mercantile Bank of Kansas City*, 106 B.R. 696 (D. Kan. 1989); see cases collected at 1 Collier on Bankruptcy ¶ 3.04[1][b] n.4 (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 16th ed. 2010).

⁴ *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989), *quoting Parsons v. Bedford*, 3 Pet. 433, 447 (1830).

⁵ *Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962).

4

> First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature. The second stage of this analysis is more important than the first. If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder.[6]

Federal law determines whether there is a right to a jury trial in a case involving state law that has been brought in federal court.[7] "[I]n such a circumstance, state law [regarding a right to jury trial] is wholly irrelevant."[8]

Count 1 of the Trustee's complaint is under § 542 for an accounting and turnover of the funds transferred to Defendants by Debtor and under § 548 for avoidance of the allegedly fraudulent transfer of such funds to the Defendants. The Defendants have a Seventh Amendment right to trial to a jury on the § 548 claim. The Supreme Court in *Granfinanciera* found that statutory bankruptcy actions to recover monetary relief alleged to be fraudulent conveyances or preferential transfers "would not have sounded in equity 200 years ago in England,"[9] and defendants have a constitutional right to a jury trial when sued by a bankruptcy trustee under § 548(a) to recover an allegedly fraudulent monetary

---

[6] *Granfinanciera,* 492 U.S. at 42, quoting *Tull v. U.S.*, 481 U.S. 412, 417-18 (1987).

[7] *Simler v. Conner*, 372 U.S. 221 (1963).

[8] 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2303 (3rd ed. 2008).

[9] *Granfinanciera,* 492 U.S. at 43.

5

transfer, if they have not submitted a claim against the bankruptcy estate.[10] On the other hand, there is no right to a jury trial as to the § 542 claim. There was no common law turnover action before the enactment of the Seventh Amendment, and the turnover remedy is equitable.[11] Defendants have a right to a jury trial to a portion of the claims in Count 1.

Count 2 is a claim to recover preferential transfers. The Trustee alleges that within 90 days prior to filing for bankruptcy relief Debtor made transfers to Defendants on account of an antecedent debt. Pursuant § 547 and § 550, the Trustee seeks to recover such transfers for the benefit of the estate. Under the *Granfinanciera* test, Defendants have a right to a jury trial on this claim since the remedy sought is recovery of money and Defendants have not filed claims against the estate.[12]

Counts 3 through 6 allege state law causes of action. Count 3 alleges that Defendants violated the Kansas Consumer Protection Act, K.S.A. 50-623 et seq, (hereafter "KCPA"), by engaging in deceptive and unconscionable acts and practices prohibited by the KCPA. She prays for the greater of Debtor's damages or statutory penalties for violation of the KCPA, for costs, and for an award of attorney fees, as authorized by K.S.A. 50-634(c). Although the Kansas Legislature has expressly provided in the KCPA that "[t]he unconscionability of an act or practice is a question for the

---

[10] *Id.*, 492 U.S. at 36.

[11] *Braunstein v. McCabe (In re TMG Holdings, LLC)*, 571 F.3d 108, 115-123 (1st Cir. 2009).

[12] *Langenkamp v. Culp*, 498 U.S. 42, 45 (1990).

court,"[13] other aspects of the Trustee's KCPA claim, including whether Defendants committed deceptive practices[14] and the amount of damages, raise legal issues.[15] There is a right to a jury under the Seventh Amendment when legal claims for the recovery of money are asserted.

Count 4 is a claim for legal malpractice and breach of fiduciary duty. These are legal claims for which there is a federal constitutional right to trial by jury.[16]

Count 5 is for disgorgement of attorney fees alleged to be unreasonable under the Kansas Rules of Professional Responsibility. If the Trustee is seeking restitution of specific funds the claim is equitable; if the Trustee is seeking recovery from the general assets of the defendants, the claim is legal and a jury right exists.[17]

Count 6 is a claim for actual and punitive damages for violation of K.S.A. 50-1116, the Kansas Credit Services Organization Act. That act addresses the activities of non-attorney credit services organizations, defined to include persons who hold out themselves to the public as willing to engage in debt management services for a fee.

---

[13] K.S.A. 50-627(b).

[14] *See Waggener v. Seever Systems, Inc.*, 233 Kan. 517, 523, 664 P.2d 813, 819 (1983) (holding under the Kansas Bill of Rights, which like the federal constitution, preserves the right to trial by jury as it existed at common law, a litigant has a constitutional right to trail by jury as to deception.)

[15] *Kampa v. White Consol. Industries, Inc.*, 115 F.3d 585, 586 (8th Cir. 1997) ("federal law has consistently held that money damages are generally characterized as a legal remedy") .

[16] *Chatzicharalambus v. Petit*, 73 F.R.D. 417, 419 (D.E.D. La. 1977) ("the right to a jury trial in tort actions brought in federal court is guaranteed by the Constitution").

[17] *See In re TMG Holdings, LLC*, 571 F.3d at 115-123.

Trustee alleges violation and a right to enforce private remedies, including the recovery of damages, attorney fees, and punitive damages. Since such remedies were available at common law, a Seventh Amendment right to a jury trial applies to this claim.

Since Defendants have a right to a jury trial as to some but not all of the claims alleged by the Trustee in her complaint, the question is whether there is cause for withdrawal of the reference of the entire complaint, or only part. This question is answered by the Supreme Court's decision in *Beacon Theatres*.[18] It holds that in an action involving both legal and equitable causes, that "only under the most imperative circumstances, which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims."[19] Respected legal commentators interpret this to mean that "when an issue is common to both legal and equitable claims in the same proceeding, it must be tried first to the jury."[20]

In this case, the legal and equitable claims arise from exactly the same circumstances. The Court is unable to identify any questions of fact which would be unique to the equitable claims. Determination of the equitable claims by the Court before jury trial on the legal claims would most likely impair the Defendants' constitutional right to a jury trial. The Court therefore recommends that the reference be withdrawn as to the

---

[18] *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959).

[19] *Id.*, 359 U.S. at 510-11.

[20] 9 Wright & Miller at § 2302.1, p. 32.

entire case. This will preserve the jury trial right and also allow the trial judge, after receiving the jury's findings on the fact questions relating to the legal issues, to proceed on the same record to determine any remaining fact questions necessary for ruling on the equitable claims.

As to the timing of the withdrawal of reference, the Court recommends that the Bankruptcy Court retain the proceedings for purposes of trial preparation, including all discovery and the disposition of dispositive motions.

The Bankruptcy Court therefore recommends as follows: (1) That the District Court find that cause exists to withdraw the reference of this case to the Bankruptcy Court, based upon Defendants' request for trial by jury and the inability of this Court to conduct a jury trial without the consent of the parties, which is not present here; and (2) that the Bankruptcy Court retain the case for trial preparation, including all discovery and ruling on dispositive motions; and (3) that after completion of trial preparation, assuming that the legal claims remain at issue, that the reference be withdrawn for trial before the District Court. A copy of the Complaint is attached for the convenience of the District Court.

**IT IS SO ORDERED.**

###

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| In Re: Megan Diane Ballway | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| _____ | ) | Case No.: 10-13945 |
| Linda S. Parks, Trustee | ) | Chapter 7 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No.: |
| | ) | |
| Persels & Associates, LLC and | ) | |
| Laura K. Simpson-Redmond | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## COMPLAINT

1. On November 18, 2010, Debtor filed a voluntary petition under Chapter 7 of Title 11 of the United States Code.

2. Linda Parks was duly appointed Trustee of Debtor's Chapter 7 bankruptcy estate.

3. This court has jurisdiction over this complaint pursuant to 28 USC §157 and §1334, as this is a proceeding which arises in the Chapter 7 proceedings of the Debtor. Venue is properly in this court pursuant to 28 USC §1409.

4. This is a core proceeding.

**Defendants and jurisdiction**

5. Defendant Persels & Associates, L.L.C. (hereinafter, "Persels") is a Maryland corporation registered to do business in Kansas. Persels can be served by service on its registered agent, The Corporation Company, Inc., 112 SW 7th Street, Suite 3C, Topeka Kansas 66603. Persels entered into a contract with Debtor, a Kansas resident, in Kansas. Further, Persels or its agents solicited Debtor, a Kansas resident, in Kansas to enter into a contract with it and to pay funds to it.

1

6. Defendant Laura K. Simpson-Redmond is an attorney licensed in Kansas. She can be served by mail at her business address at 13612 W. 75th Terrace, Shawnee, OK 66216. According to Persels, Defendant Simpson-Redmond provided legal services to Debtor in Kansas. Alternatively, Simpson-Redmond and Persels were actual and apparent agents of one another and Simpson-Redmond ratified Persels' conduct.

**Debtor's financial condition in March 2010**

7. In March 2010, Debtor was insolvent. The value of her liabilities outweighed that of her assets by more than a third and her unsecured debt of over $50,000. Debtor's income the year previous was only $7,500 and her monthly net cash flow, after deducting only the amount need to secure necessities, was $34.00.

**Debtor hires a "national law firm dedicated to consumer rights", which has fiduciary duties toward her**

8. In an effort to avoid bankruptcy and in response to online advertising, Debtor hired Persels. Persel's stationary identified as its Kansas counsel Laura K. Simpson-Redmond. During the events described in this complaint, Defendants acted independently and as actual or apparent agents for one another. Also, Defendants ratified one another's conduct.

9. Though a reasonable attorney would have advised a Debtor with over $50,000 in unsecured debt, liabilities gravely outnumbering assets, and a very limited net cash flow to file for bankruptcy and/or not to engage in debt settlement, Defendants either explicitly or implicitly advised Debtor to hire Persels to assist her in debt settlement as an alternative to bankruptcy.

10. Persels provided Debtor with a "Retainer Agreement" and "Debt Settlement Representation Summary and General Disclosures" that informed Debtor that she would pay $2,839.00 over the first 18 months of the representation in legal fees. Furthermore, these documents stated that the payment of legal fees "means that there will be limited funds available for settlement during the first 18-24 months of the representation." In addition, the documents disclosed that in the case

the agreement was terminated early, Debtor would be charged "an early termination fee of $150.00."

11. In its "Retainer Agreement," Persels disclosed that it "is a national law firm…completely dedicated to giving you independent advice and to serve your interests only. We will work on your behalf to negotiate settlements with your creditors that are within your means." The Retainer further states "You have retained us to help you resolve your unsecured debt…We used the financial information you gave us to prepare a Personal Financial Summary which is a cash flow statement and working budget." It additionally states, "We can…terminate representation if we believe that continuing would not be in your best interest."

12. By entering into a debt settlement contract with Debtor, Persels explicitly or implicitly represented that competent attorneys had determined that debt settlement was a recommended approach for dealing with Debtor's unsecured debt. This was not competent legal advice. By identifying Laura K. Simpson-Redmond as the Kansas attorney for Persels, Persels and Laura K. Simpson-Redmond either explicitly or implicitly represented that a competent lawyer familiar with Kansas law had determined that debt settlement was an appropriate way for Debtor to deal with her debt.

13. The court held in July 2009 that CLA, a sister company of Persels, also involved in debt consolidation practices, charged unreasonable fees and likely engaged in the unauthorized practice of law. Despite the strong language directed to CLA, Persels continues to charge unreasonable fees in Kansas several months after the court's opinion in *In Re Wood*.

14. After several months of making monthly payments of $230.00 to Persels, only $755 has accumulated in Debtor's escrow account as Persels had deducted legal fees from the payments. Creditors began filing suit against Debtor. Debtor contacted Persels for advice. After several phone calls, Debtor was told that she would probably have to file bankruptcy. Persels failed to settle any of Debtor's debts but retained its legal fees. Debtor requested that Persels refund all moneies paid, but received only a partial refund after several phone calls.

3

**The law firm's recommendations breach its fiduciary duty to Debtor**

15. As attorney for the Debtor, Defendants had a fiduciary duty to put Debtor's interests ahead of its own and not to engage in any activity that was detrimental to Debtor. Persels' advice to Debtor to engage in "debt settlement" was unreasonable and was given to benefit Defendants at the Debtor's expense. Through this incompetent and self-interested advice, Defendants knew or should have known that they would charge Debtor fees that resulted in little to no benefit to Debtor and for which they would have done no legal work. Defendants breached their fiduciary duty owed to their clients by advising Debtor to engage in "debt settlement" and to pay fees to Defendants when that was not in Debtor's best interest. Defendants' motivation for this advice was to earn fees.

**The law firm retains fees after cancellation**

16. Debtor made her last payment to Persels in September 2010 and subsequently cancelled her contract with Persels. During their contractual relationship, Persels failed to settle any of Debtor's debt. After numerous requests for refund, Persels refunded Debtor only $1200.00, retaining an amount in excess $1300.00 in fees. This is an unreasonable fee.

17. Rule 1.5 of the Kansas Supreme Court Rules for Professional Conduct provides that a reasonable fee takes into account the time and labor required, the difficulty of the questions involved, the skill requisite to performing the service, the likelihood, if apparent to the client, that the acceptance of particular employment will preclude other employment by the lawyer, the fee customarily charged in the area, the amount involved and results obtained, the time limitations, the nature and length of the professional relationship with the client, the experience reputation and ability of the lawyers and whether the fee is fixed or contingent. That rule provides that this court can review the fee contract and determine whether the contract is reasonable. This fee was unreasonable in that Debtor did not gain any benefit from the representation and the Debtor received incompetent advice and counsel that was motivated by Defendants' desire to earn fees rather than what was best for Debtor.

18. The factors that might justify a non-refundable retainer–securing an attorney's services so as to prevent the attorney from undertaking other representation–are not present here.

**Defendants' advice was legal malpractice**

19. Defendants' advice to Debtor to engage in debt settlement was legal malpractice in that it departed from the standard of care that would be used by a competent lawyer advising a client with substantial credit card debt and only $34 per month discretionary income. A competent lawyer would have known that Debtor's bankruptcy was inevitable, that diverting money to Defendants rather than to creditors was detrimental to Debtor's financial condition, and that "debt settlement" and the fees it required did not benefit Debtor.

20. The law firm is not registered in Kansas as a "debt management services company" Kansas law requires debt management service companies engaged in debt settlement to be licensed and registered. KSA 50-1118. Persels was not registered or licensed, though the court specifically cautioned against this deficiency in its July 2009 opinion in *In Re Wood*.

21. Kansas law exempts a "person licensed to practice law in this state" from registration requirements if the person is "acting within the course and scope of such person's practice as an attorney." Attorney Laura K. Simpson-Redmond was added to the Persel letterhead in an effort to avoid the licensing requirements of KSA 50-1118. However, Simpson-Redmond did not represent Debtor and did not "act within the course and scope" of her legal practice. The other lawyers in Persels' firm would not be exempt from KSA 50-1118, nor would Persels, a separate corporation.

**Count 1–Trustee's §548 and §542 claim against the Defendants for an accounting and avoidance of fraudulent transfer**

22. Debtor transferred at least $2530.00 and possibly more to Defendants in the two years before her bankruptcy. Pursuant to 11 USC §542, the Trustee is entitled to an accounting of property transferred from Debtor to Defendants.

5

23. Debtor did not receive a reasonably equivalent value in exchange for the transfer and Debtor was insolvent at that time the transfer was made or became insolvent because of the transfer; and/or Debtor intended to incur or believed that she would incur debts beyond the Debtor's ability to pay; and/or Debtor was engaged in a transaction for which the property remaining with the Debtor was unreasonable small capital.

24. Alternatively, the transfer was made with actual intent to hinder, delay or defraud the Debtor's existing creditors.

25. The transfer is avoidable under 11 USC §548 and recoverable for the benefit of the estate under 11 USC §550.

26. The Trustee has incurred fees, costs and expenses in prosecuting this action. The Trustee is entitled to prejudgment interest from the date of Debtor's demand.

WHEREFORE, the Trustee prays that the court enter an order requiring Defendants to provide an accounting of all funds transferred by Debtor to Defendants or either of them, for an order requiring Defendants to turn over any funds transferred by Debtor to Defendants, for costs and attorneys fees and prejudgment and post judgment interest and for all other such relief as the court deems just and equitable.

**Count 2–Trustee's claim for recovery of preferential payments**

27. Debtor declared bankruptcy on November 18, 2010. Debtor made payments to Persels on account of an antecedent debt owed by Debtor to Persels while Debtor was insolvent and within 90 days of filing for bankruptcy protection.

28. Pursuant to 11 USC §547 and §550, the Trustee is entitled to an accounting of all payments made to Defendants and the recovery of all payments made either to Defendants or made by Defendants to creditors of Debtor on Debtor's behalf.

WHEREFORE, the Trustee prays for an order requiring Defendants to provide an accounting of all funds received from Debtor within 90 days of declaring bankruptcy or funds paid by Defendants to any of Debtor's other creditors within 90 days of Debtor's declaring bankruptcy and for turnover of any

funds paid to Defendants within 90 days of Debtor's declaring bankruptcy and for interest, attorneys fees, costs, and other such relief as the court deems just and equitable.

**Count 3–Trustee's claim against Defendants Persels and Simpson-Redmond for violation of Kansas Consumer Protection Act**

29. Defendants are not authorized to engage in debt management services in the state of Kansas as required by KSA 50-1118.

30. The services for which Debtor contracted with Defendants were a "consumer transaction," Defendants were "suppliers" as that term is used in the Kansas Consumer Protection Act and Debtor was a "consumer" as that term is used in the Kansas Consumer Protection Act. Defendants or their agents solicited Debtor to engage in a consumer transaction.

31. Each unlicensed transaction engaged in by Defendants without a license constitutes a deceptive act in violation of the Kansas Consumer Protection Act, KSA 50-623 et. seq., which provides for a $10,000 civil penalty plus attorneys fees and costs. This is particularly appropriate when this court has already pointed out that Persels failed to register its "debt management services."

32. Defendants entered into a contract with Debtor without disclosing that they had been told by the court to register as a "debt management service" and had refused to do so. These nondisclosures were deceptive and unconscionable acts and practices and were prohibited by the KCPA.

33. Defendants also misrepresented that their services had value to Debtor when a reasonable attorney would know they did not. As Trustee of Debtor's bankruptcy estate, the Trustee is entitled to recover damages, fees or penalties caused by Defendants' pre-petition deceptive and unconscionable acts toward Debtor.

WHEREFORE, Trustee prays for judgment against Defendants for the greater of Debtor's damages or penalties for violation of the KCPA, for costs, for attorneys fees, and for other such relief the court deems just and equitable.

**Count 3–Trustee's claim for legal malpractice and breach of fiduciary duty against Defendants**

34. Defendants represented that they were attorneys and fiduciaries to Debtor.

35. Despite their fiduciary obligations to Debtor, they recommended a course of action to her that was of benefit to them and to the detriment of Debtor.

36. In addition, Defendants committed legal malpractice. A reasonably competent lawyer would not have:

- recommended debt settlement to the insolvent Debtor
- charged unreasonable fees to an insolvent Debtor
- allowed the unauthorized practice of law
- failed to disclose to Debtor the risks of participating in debt settlement
- failed to disclose to Debtor that entering into the contract she entered into with Defendants was unlikely to keep her out of bankruptcy
- initially represented that they were entitled to $2350.00, less the $755.00 in Debtor's escrow, and then refunding approximately $445.00 for the "proportionate refund of fees"
- provided misleading and inadequate information to Debtor about what were appropriate legal fees
- recommended a course of action in which it was likely Debtor would incur fees for services she would never receive
- encouraged Debtor to incur upfront fees for legal services they knew it was likely they would not provide

37. The actions of Persels were ratified by Laura Simpson-Redmond. Laura Simpson-Redmond and Persels were actual or apparent agents of one another and are jointly and severally liable for one another's actions.

38. The Debtor incurred actual damages and damages for emotional distress because of Defendants' legal malpractice and breach of fiduciary duty. In addition to actual damages, Debtor is entitled to punitive damages as well.

39. As Trustee of Debtor's bankruptcy estate, the Trustee is entitled to recover Debtor's prepetition damages for the benefit of her bankruptcy estate.

WHEREFORE, the Trustee prays for judgment against Defendants individually and jointly and severally for actual and punitive damages, for attorneys fees, for costs and for other such relief as the court deems just and equitable.

**Count 4–Trustee's claim for disgorgement of an unreasonable attorneys' fee**

40. Pursuant to the Rules of Professional Conduct of the Kansas Supreme Court, this court can review an attorney fee contract and determine whether the fee is reasonable and, if it is not, can order the payment of a reasonable fee.

41. Fees charged by Defendants were unreasonable because, among other things, the Debtor did not obtain any benefit from the representation.

WHEREFORE, the Trustee prays for an order of the court requiring Defendants to disgorge the fees they have retained, along with prejudgment interest, for costs and attorneys fees and other such relief the court deems just and equitable.

**Count 5—for actual and punitive damages for violations of 50-1116 et seq.**

42. The acts described above, including but not limited to misleading debtor about whether she was receiving legal services, engaging in deceptive practices in order to entice debtor into entering a contract with Defendants, charging fees that exceed those allowed by the statutes and not advising debtor of the unlikelihood that she would derive a benefit from debt settlement all violate the Kansas Credit Services Organization Act.

43. Debtor has a private right of action for her damages, her attorneys fees and punitive damages pursuant to KSA 50-1133.

WHEREFORE, Trustee prays for damages in the amount of all funds provided from Debtor to Defendants, for prejudgment interest, for costs and attorneys fee and for punitive damages as provided by statute and for all other relief the court deems just and equitable.

s/ Gaye B. Tibbets
Gaye B. Tibbets, 13240
HITE, FANNING & HONEYMAN L.L.P.
100 N. Broadway, Ste. 950
Wichita, KS 67202-2209
Telephone: (316) 265-7741
Facsimile: (316) 267-7803
E-mail: tibbets@hitefanning.com
*Attorneys forTrustee*